Shirley **BIVINS** et al., Plaintiffs-Appellants,

v.

**BIBB COUNTY BOARD OF EDUCATION** and Orphanage For Bibb County, et al., Defendants-Appellees.

No. 71–2983.

United States Court of Appeals, Fifth Circuit.

May 3, 1972.

Rehearing and Rehearing En Banc Denied June 16, 1972.

Thomas M. Jackson, Macon, Ga., Jack Greenberg, Norman Chachkin, New York City, for plaintiffs-appellants.

Frank C. Jones, W. Warren Plowden, Jr., Macon, Ga. (Jones, Cork, Miller & Benton, Macon, Ga., of counsel), for defendants-appellees.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

PER CURIAM:

The district court held that the Bibb County Board of Education's compliance with this Court's last desegregation directive effectively transformed that county's public school system into a unitary one. The plaintiffs-appellants' motion for supplemental relief seeking the elimination of four all-black, thirteen predominantly black and several all-white elementary schools was, therefore, denied. 331 F.Supp. 9 (M.D.Ga.1971). We reverse and remand for further proceedings.

The en banc decision of this Court in Singleton v. Jackson Municipal Separate School District, 5 Cir. 1970, 419 F.2d 1211, discussed the progress of disestablishment of the dual school system in Bibb County, Georgia, as follows:

"This is a freedom of choice system on which a special course transfer provision has been superimposed. Special courses offered in all-Negro schools are being attended by whites in substantial numbers. This has resulted in some attendance on a part time basis by whites in every all-Negro school. Some three hundred whites are on the waiting list for one of the special courses, remedial reading. The racial cross-over by faculty in the system is 27 per cent.

"The order appealed from continues the existing plan with certain modifications. It continues and expands the elective course programs in all-Negro schools in an effort to encourage voluntary integration. The plan calls for a limitation of freedom of choice with respect to four schools about to become resegregated. Under the present plan the school board is empowered to limit Negro enrollment to 40 per cent at these schools to avoid resegregation. Earlier a panel of this court affirmed the district court's denial of an injunction against the quota provision of this plan pending hearing en banc. The prayer for injunction against continuation of the quota provision is now denied and the provision may be retained by the district court pending further consideration as a part of carrying out the requirements of this order.

"It is sufficient to say that the district court here has employed bold and imaginative innovations in its plan which have already resulted in substantial desegregation which approaches a unitary system. We reverse and remand for compliance with the requirements of Alexander v. Holmes County and the other provisions and conditions of this order." 419 F.2d at 1221.

After the *Singleton* decision, the district court directed the Bibb County school authorities to implement a majority-to-minority transfer program and to undertake faculty desegregation in line with the *Singleton* formula. In all other respects, however, the district court adhered to the freedom-of-choice plans which had been before the en banc court

in *Singleton.* By so doing, the district court refused to follow any one of the three revised desegregation plans then before it: plaintiffs' plan, the plan submitted by the United States Department of Health, Education, and Welfare, and the school board's plan. The private plaintiffs then appealed to this Court. We reversed the district court's judgment and directed the district court to enter its order approving the plan proposed by the school board of Bibb County and to hold additional hearings for such modifications as were necessary to correct any unworkable elements in the plan. Bivins v. Bibb County Board of Education, 5 Cir. 1970, 424 F.2d 97, 99. The district court and the school authorities complied with our mandate.

On April 20, 1971, the Supreme Court decided Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554. The Court there addressed itself to the continued existence of one-race public schools in formerly dual school systems as follows:

> "No *per se* rule can adequately embrace all the difficulties of reconciling the competing interests involved; but in a system with a history of segregation the need for remedial criteria of sufficient specificity to assure a school authority's compliance with its constitutional duty warrants a presumption against schools that are substantially disproportionate in their racial composition. Where the school authority's proposed plan for conversion from a dual to a unitary system contemplates the continued existence of some schools that are all or predominantly of one race, they have the burden of showing that such school assignments are genuinely nondiscriminatory. The court should scrutinize such schools, and the burden upon the school authorities will be to satisfy the court that their racial composition is not the result of present or past discriminatory action on their part." 402 U.S. at 26, 91 S.Ct. at 1281, 28 L.Ed.2d at 572.

The plaintiffs-appellants filed their motion for further relief in light of *Swann,* supra, on July 16, 1971. That motion complained of the continued existence of four all-black, thirteen predominantly black, and three all-white elementary schools within Bibb County's public school system. In response to show cause order issued by the district court, the school authorities submitted a "sector-proximity" plan for further desegregation which would have closed five black elementary schools, caused the transportation of a significant number of inner-city black students to schools outside their residential neighborhoods in grades one through five, and permitted most of the white elementary students in those grades to attend schools in their residential neighborhoods. The plaintiffs-appellants objected to the Board's plan and advocated a "sector-bumping" plan which would have closed three black and three white elementary schools and required the county's white elementary student population to absorb a greater degree of the transportation burden.

An evidentiary hearing was held by the district judge on August 16, 1971, following which he announced his findings and conclusions from the bench. He determined that the compliance of the Bibb County public school authorities with this Court's order of February 5, 1970, converted that county's public school system into a unitary system, thereby making any additional bussing of students "unreasonable, impractical and unwarranted". Accordingly, he denied the plaintiffs-appellants' motion for further relief, from which a timely appeal has been taken.

We hold that the district court erred in failing to pass upon the relative merits of the two plans presented to it for two reasons: (1) our order of February 5, 1970, was not intended to bring the litigation to desegregate the Bibb County public schools to a final close, but rather was designed to expedite the process of disestablishment of the dual

school system in that county without the necessity for further proceedings in the district court; and (2) the Supreme Court's decision in *Swann*, as stated supra, requires that school authorities and the courts make every effort to eliminate or minimize one-race public schools. Prior to the *Swann* decision, prevailing decisions had not focused specifically upon the continued existence of one-race public schools.

Upon remand, the district court should consider the relative merits of the plans submitted by the parties designed to eliminate or minimize the number of one-race elementary schools in Bibb County and should frame his order with that objective—compliance with *Swann*—in mind. In so doing, the district court should further bear in mind that the burdens of closed schools and being bussed should not fall unequally on the minority race. See, Lee v. Macon County Board of Education, 5 Cir. 1971, 448 F.2d 746, 753–754.

The judgment of the district court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion. Let our mandate issue immediately.

COLEMAN, Circuit Judge (dissenting):

For the reasons enumerated in Part I of my prior dissenting opinion, 424 F.2d 97, 99 (1970), and for the further reason that I consider the memorandum opinion of the District Court, as presently before us, to be sound, I respectfully dissent.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.