Houston BASSETT, Plaintiff-Appellee,

v.

ATLANTA INDEPENDENT SCHOOL DISTRICT et al., Defendants-Appellants.

No. 72-2848.

United States Court of Appeals, Fifth Circuit.

Oct. 30, 1973.

Charles E. Thompson, Atlanta, Tex., Franklin Jones, Jr., Marshall, Tex., for defendants-appellants.

Larry Watts, Houston, Tex., for plaintiff-appellee.

Before BELL, INGRAHAM and RONEY, Circuit Judges.

RONEY, Circuit Judge:

As a result of Government pressure to desegregate its schools, Atlanta, Texas, unitized its school system commencing with the 1970–71 term. After consolidating their three high schools into one, the school district had two more high school principals than it needed, one of which was plaintiff, who then sued for reinstatement and back pay. Although the District Court, 347 F.Supp. 1191, found that the school board did not violate plaintiff's constitutional rights in failing to offer him the principalship of the surviving high school, or the surviving junior high, it ordered immediate reinstatement of plaintiff as a full-time principal of one of the elementary schools, reimbursement of lost wages, reinstatement of all other benefits of continued employment, attorney's fees, and costs. We agree with the District Court that the principles set forth in Singleton v. Jackson Municipal Separate School District, 419 F.2d 1211 (5th Cir. 1969), cert. denied, 396 U.S. 1032, 90 S.Ct. 612, 24 L.Ed.2d 530 (1970), apply to this case. We reverse, however, on the ground that since the Court found no violation of *Singleton* in the failure to hire plaintiff in either of the two positions which he had indicated he would accept, the Court should not have ordered reinstatement and back pay to a job that the plaintiff maintained would be unacceptable prior to and during this lawsuit.

Houston Bassett was employed by the Atlanta, Texas, school system as principal of the all black Booker T. Washington High School during the 1969–70 school term. He had served in that capacity for the preceding seven and one-half years. Previously he had been an elementary school principal in the Atlanta system for four and one-half years.

In February of 1969, Bassett was extended a two-year contract for continued employment, as was customary in the system. Bassett's contract, however, contained one variation from the other contracts issued: his principalship was contingent upon Booker T. Washington High School remaining in existence as a secondary school. Should this contin-

gency not occur, the contract provided for unspecified reassignment.

The possibility that Booker T. Washington would cease to exist as a high school was anticipated by the school board and administration officials. A new high school, capable of housing all of the secondary students in the district, both black and white, was under construction. Its completion, expected prior to the 1970–71 school term, would implement a reorganization of Atlanta's dual system into a unitary system. At that time the all black secondary school would cease to exist.

Bassett reviewed the tendered contract but returned it unsigned to the Superintendent of Schools. He attached a note which in substance stated he would accept a junior high school principalship. The District Court found that Bassett refused the proffered contract on the claim that it would force him to accept either a demotion or a dismissal in violation of the Fourteenth Amendment and 42 U.S.C.A. § 1983.

The Superintendent responded by discussing with Bassett the possibility of his accepting the newly created position of assistant principal at the new high school. He formulated a tentative job description and forwarded this to Bassett for his consideration. The assistant principalship was rejected by Bassett, who insisted that he was entitled to a position equal to or better than junior high principal.

Bassett continued as principal of Booker T. Washington during the 1969–70 school term without a written contract. In April of 1970, as the new high school neared completion, a new school Superintendent notified Bassett that he would not be recommended for reemployment since he was presently not working under a signed contract and since Booker T. Washington High School was being absorbed in the 1970–71 unitized system.

Bassett brought this suit for reinstatement and back pay contending that he is entitled to a position as principal of either grades 9 through 12 or grades 7 and 8 because he was formerly principal of grades 7 through 12.

I.

Between the time that Bassett refused the written two-year contract and the termination of his employment, this Court decided Singleton v. Jackson Municipal Separate School District, *supra*. *Singleton* established the criteria concerning faculty displacement in court ordered desegregation cases.

> If there is to be a reduction in the number of principals . . . employed by the school district which will result in a dismissal or demotion of any such [principal, the principal] to be dismissed or demoted must be selected on the basis of objective and reasonable non-discriminatory standards from among all the staff of the school district. In addition if there is any such dismissal or demotion, no staff vacancy may be filled through recruitment of a person of a race, color, or national origin different from that of the individual dismissed or demoted, until each displaced staff member who is qualified has had an opportunity to fill the vacancy and has failed to accept an offer to do so.

*Singleton, supra,* 419 F.2d at 1218. The *Singleton* criteria are not applicable however, if it is found that the dismissal or demotion occurred prior to February 1, 1970, the effective date of *Singleton*. Sparks v. Griffin, 460 F.2d 433 (5th Cir. 1972). Although the Atlanta School District was not a party defendant to *Singleton*, the District comes within the broad mandate of that decision. We must therefore determine whether *Singleton* is to apply under the circumstances of this case: did the dismissal occur prior to the effective date of that decision?

■ Appellants contend that Bassett's failure to sign his tendered employment contract in March, 1969, should mark the date of the dismissal. This contention fails to consider the ef-

fect of Bassett's continued employment during the 1969–70 school term without benefit of the contract and without objection from the school board. The District Court found that "the school board is estopped from asserting termination of the contract in March, 1969, . . . in light of subsequent conduct by the board that included retaining Bassett as principal and paying his monthly salary for the 1969–70 school year. Corbin on Contracts §§ 193–209." The District Court correctly held that the effective date of dismissal occurred when Bassett's employment was terminated at the end of the 1969–70 term, and that *Singleton* is applicable under the circumstances.

## II.

■■ The next question is whether the school district met the *Singleton* criteria. The critical question is whether the school board's offer of an assistant principalship would violate *Singleton* standards as a demotion. Demotion was defined in *Singleton*:

"Demotion" . . . includes any reassignment (1) under which the staff member receives less pay or has less responsibility than under the assignment he held previously, [or] (2) which requires a lesser degree of skill than did the assignment he held previously . . . .. *Id.* 419 F.2d at 1218.

In Lee v. Macon County Board of Education, 453 F.2d 1104 (5th Cir. 1971), the Court explicated the definition and subsequently ascertained that loss of responsibility was the key, holding that *Singleton* criteria are satisfied by an offer of a comparable position to the displaced personnel. Equal monetary remuneration is insufficient to cushion reduced responsibility. Lee v. Macon County Board of Education, 456 F.2d 1371 (5th Cir. 1972). There is no violation of *Singleton* criteria, however, if the displaced personnel voluntarily terminates his employment with the school district.

In the case *sub judice*, five pre-desegregation principals were serving in six schools (one principal supervised two schools). Upon unitization the three high schools and one junior high were consolidated into one high school and one junior high. Bassett was not among the two selected by the school board for principal of the high school and junior high school. The Court found that he was not entitled to reinstatement to either of those positions: the school board had not abused its discretion since the two principals selected had more secondary school experience than Bassett. This finding is supported by substantial evidence and has not been disputed by way of a cross appeal.

The Court then found under *Singleton* that a high school assistant principalship was a demotion for Bassett, but that an elementary school principalship was not a demotion. It seems to us that this reasoning better fits the needs of the plaintiff in this lawsuit than it does the ends of justice. By almost any standard a principalship of an elementary school would not be comparable in responsibility to the principalship of a junior high or senior high. Bassett had consistently contended he was entitled to a senior or junior high.

The District Court faulted the school board for considering the high school assistant principalship with Bassett. Although the District Court found that no "formal offer" was tendered, the record is replete with evidence that Bassett could have had that job but decided not to accept it. There was testimony from respectable authority that the position of assistant principal in a large integrated high school was comparable or better than a job of principal of a small segregated high school, white or black. It is obvious that Bassett would take neither an elementary position nor an assistant position at the high school level because he thought that anything less than junior high principal would be a demotion.

■ We cannot rationalize the District Court's authority to order back pay

and reinstatement to a job that the plaintiff considered a demotion and indicated was unacceptable not only prior to the lawsuit but during the course of litigation.[1] Money damages and reinstatement are inappropriate where a school board is told it has not violated plaintiff's rights by failing to offer him the job he wanted and contended he was entitled to, but it was remiss in not offering him a job he said he did not want and contended he did not have to take.

The evidence in this case amply demonstrates that racial discrimination was prevalent in the Atlanta school system prior to unitization. But the freshness of the *Singleton* decision probably led to a misunderstanding by both parties to this litigation as to their respective rights upon establishment of a unitary system. Hindsight reveals that the school board would have been required to offer Bassett an elementary school principalship had he not previously indicated that he would regard this as a demotion and unacceptable. There is no evidence that would support a finding that the school board would have refused to consider Bassett for such a position. He had formerly been an elementary principal in the system.

■ In the interest of fairness to all concerned we think this case should be reconsidered at the trial level to determine the advisability of entering an order requiring the school board to offer Bassett the first principal vacancy that might occur in the school system, under *Singleton* standards.

### III.

We reverse the award of attorneys fees in this case. The facts do not lend themselves to the finding of unreasonableness and obstinancy on the part of the school board that supports an award of attorneys fees. Johnson v. Combs, 471 F.2d 84 (5th Cir. 1972).

Although the District Court found that an assistant principalship in the high school would be a demotion from Bassett's former position, we think the record presents a close enough question on the point to remove the school system's offer from being unreasonable and obdurately obstinate.

Reversed and remanded.

■

---

[1]. After a careful study of the record before us, we find nothing in the trial to indicate that Bassett would have been satisfied with an elementary principalship. In testifying as to attorneys fees and obstinancy or obduracy of the school board in trying to settle the matter, Bassett's attorney testified as follows:

> Q The fact that he was offered the next principal's job that might arise, is that still considered by you to be obstinate and obdurate?
>
> A He was offered the next principal's job on the level of junior high or elementary. I have no idea why he should not be made junior high school principal now since in my opinion, and obviously, I am biased, because I am his advocate, his qualifications have never been tested in the crucible of examination, comparative examination with the others, and I feel like—I see no reason why he should not be made junior high school principal now, very frankly, why he should not be reinstated, perhaps even be made high school principal. I'm not all that sure that Mr. Caver Johnson's qualifications could withstand the test.
>
> Q To remove one or the other of these gentlemen and reinstate him?
>
> A Yes, sir, bumping is the word.